IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANDREW B. EARHEART,       *
                              *
     Plaintiff,         *
                              *
vs.                     * CIVIL ACTION NO. 16-00610-B
                              *
NANCY BERRYHILL,[1]     *
Acting Commissioner of Social  *
Security,              *
                              *
     Defendant.        *

## ORDER

Plaintiff Andrew B. Earheart (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. On October 5, 2017, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 13). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration

_____

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.   <u>Procedural History</u>[2]

Plaintiff filed his application for benefits on May 1, 2015. (Doc. 7-5 at 2). Plaintiff alleged that he has been disabled since August 1, 2014, based on "PTSD, anxiety disorder, depression, and ADD." (Doc. 7-6 at 7, 10).

Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge James F. Barter (hereinafter "ALJ") on November 2, 2015, and on February 7, 2016.[3] (Doc. 7-2 at 37, 120). Plaintiff attended the second hearing with his counsel and provided testimony related to his claims. (Doc. 7-2 at 42). A vocational expert ("VE") appeared and testified at both hearings. (Doc. 7-2 at 60, 126). On June 24, 2016, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Doc. 7-2 at 20). The Appeals Council denied

---

[2] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF. Because the transcript is divided into separate documents, the Court's citations include the appropriate CM/ECF document number.

[3] Plaintiff was unable to attend the first hearing, but the ALJ proceeded with testimony from a vocational expert. (Doc. 7-2 at 126). A second hearing was scheduled, at which Plaintiff and a second vocational expert testified. (Doc. 7-2 at 41).

Plaintiff's request for review on November 4, 2016. (Doc. 7-2 at 2). Therefore, the ALJ's decision dated June 24, 2016, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The Court conducted oral argument on October 26, 2017. (Doc. 16). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issues on Appeal

> **1. Whether substantial evidence supports the ALJ's RFC assessment for a full range of work at all exertional levels with the stated non-exertional limitations?**
>
> **2. Whether the ALJ erred in assigning little weight to the opinion of treating nurse practitioner, Dolores Bray, CRNP, while assigning great weight to the opinion of non-examining State Agency psychologist, Joanna Koulianos, Ph.D.?**
>
> **3. Whether the ALJ erred by failing to properly consider the VA's 70% disability rating for PTSD?**

## III. Factual Background

Plaintiff was born on September 10, 1978, and was thirty-seven years of age at the time of his second administrative hearing on February 7, 2016. (Doc. 7-2 at 42). Plaintiff graduated from high school and attended three years of college. (Doc. 7-2 at 42-43). Plaintiff also served in the military from

2002 to 2005 and worked as a special electronic device technician for the Army. (Doc. 7-2 at 45; Doc. 7-6 at 85). After leaving the Army, Plaintiff worked in 2006 as a subcontractor for the Corps of Engineers[4] and from 2008 to 2012 as an office furniture installer. (Doc. 7-2 at 43-45; Doc. 7-6 at 85-86).

At the time of his hearing, Plaintiff testified that he was actively searching for work, sending out his resume, and filling out job applications in multiple places. Plaintiff testified that, "[a]nything right now that I could find would be great." (Doc. 7-2 at 46-47). Plaintiff also testified, however, that if he found a job, he would have trouble keeping it because he does not sleep well at night, averaging approximately four hours of sleep a night,[5] and because he has intermittent problems with his left knee caused by a minor cartilage tear. (Doc. 7-2 at 47-48, 51-52). Plaintiff testified that his knee hurts after prolonged standing and walking. (Doc. 7-2 at 51).

Plaintiff testified that he is divorced and lives alone.

_____

[4] In 2006, Plaintiff worked as a subcontractor for the Corps of Engineers in New Orleans after Hurricane Katrina. He was in charge of quality assurance, debris removal, and leasing FEMA trailers. (Doc. 7-2 at 43).

[5] Plaintiff testified that he does not take sleep medication because of his past opioid dependence problems. (Doc. 7-2 at 48). However, he receives medication (Suboxone) at Altapointe to treat his opioid dependency. (Doc. 7-2 at 57-58). He also takes medication for anxiety. (Doc. 7-2 at 49).

(Doc. 7-2 at 46). On a normal day, Plaintiff wakes up very early and goes for a walk or jog to get exercise, gets on the computer and checks his emails,[6] and does work or odd jobs for friends, such as installing office furniture.[7] (Doc. 7-2 at 52-53). He goes to church once a month and on holidays. (Doc. 7-2 at 54). Plaintiff does his own cleaning, including bathrooms, sweeping, vacuuming, and laundry. (Doc. 7-2 at 55). In a Function Report dated May 25, 2015, Plaintiff reported that he takes care of his own personal care needs; he cooks, mows the yard, cleans house, does laundry, drives, goes out every day, shops, handles his own finances, and enjoys reading. (Doc. 7-6 at 33-36). He also reported that he does not handle stress or changes in routine well. (Doc. 7-6 at 38).

## IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is

---

[6] Plaintiff testified that he does not have internet, but he goes to Starbucks or the library approximately one hour a day to work on his computer. (Doc. 7-2 at 54). He walks or borrows his parents' car for transportation because he does not currently own an automobile. (Doc. 7-2 at 54-55).

[7] Plaintiff testified that he is able to work for six or seven hours a day installing office furniture and that he gets along well with the crew. (Doc. 7-2 at 56).

supported by substantial evidence and 2) whether the correct legal standards were applied.[8] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

## V.   **Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§

---

[8] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.  20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of

examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI.  Discussion**

> **A. Substantial evidence supports the ALJ's RFC assessment for a full range of work at all exertional levels with the stated non-exertional limitations.**

Plaintiff argues that the ALJ violated "SSR 96-8p" by finding that he could perform a full range or work at all exertional levels, with certain stated non-exertional limitations, without detailing Plaintiff's limitations "in a function-by-function fashion." (Doc. 8 at 3). Defendant counters that substantial evidence supports the ALJ's RFC

assessment and that the RFC expressly accommodates all of Plaintiff's physical and mental limitations. (Doc. 9 at 5). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

In this case, the ALJ found at step two of the sequential evaluation process that Plaintiff has the severe impairments of posttraumatic stress disorder (PTSD), depressive disorder, NOS, attention deficit hyperactivity disorder (ADHD/ADD), marijuana abuse in partial remission, and osteoarthritis of the left knee. (Doc. 7-2 at 22). The ALJ concluded that, through the date last insured, Plaintiff retained the residual functional capacity (hereinafter "RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: Plaintiff "can occasionally climb ladders, ropes, or scaffolds," "can perform simple routine tasks of unskilled work that require simple work decisions and ordinarily have few changes that are gradually introduced," and "can interact with coworkers on a basic level but contact with the public should be occasional." (Doc. 7-2 at 25). Based on the testimony of the VE, the ALJ found that, while Plaintiff cannot perform his past relevant work, he can perform jobs such as "hand packager," "industrial cleaner," and "kitchen helper," all medium and unskilled. (Doc. 7-2 at 30-31). Thus, the ALJ concluded that Plaintiff is not disabled. (Doc. 7-2 at 31).

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet his burden in this case.

As stated, Plaintiff argues that the ALJ erred in failing to provide a function-by-function assessment of the limitations caused by his mental impairments (*i.e.*, PTSD, depressive disorder, ADHD, and marijuana abuse) and his physical impairment (*i.e.*, problems with his left knee) in determining the RFC, thereby violating SSR 96-8p.[9] (Doc. 8 at 3-4). Specifically,

---

[9] SSR 96-8p provides that "the RFC assessment must first identify the individual's functional limitations or restrictions and

Plaintiff argues that the ALJ generalized his mental impairments, did not expressly define what he meant by "can interact with coworkers on a basic level," and failed to provide "rationale with specific references to the evidence of record in support of his assessed limitations." (Id. at 4). Plaintiff's argument is misplaced.

"The Eleventh Circuit has repeatedly rejected similar claims that an ALJ's failure to perform an explicit function-by-function assessment under SSR 96-8p is an error of law mandating reversal, so long as the ALJ's decision sufficiently indicates that he or she considered all relevant evidence in arriving at an RFC determination." Aldao v. Colvin, 2016 U.S. Dist. LEXIS 42507, *11, 2016 WL 1236899, *4 (S.D. Fla. Mar. 30, 2016) (quoting Stokes v. Colvin, 2016 U.S. Dist. LEXIS 8694, *20, 2016 WL 311295, *7 (S.D. Ala. Jan. 26, 2016) (collecting Eleventh Circuit cases)); accord Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) ("Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence

_____

assess his or her work-related abilities on a function-by-function basis.... Only after that may RFC be expressed in terms of the exertional levels of work...." See also Cooperman v. Colvin, 2014 U.S. Dist. LEXIS 83420, *9, 2014 WL 2801273, *3 (N.D. Ala. June 19, 2014).

such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed.") (citations omitted).

In this case, the record reflects that the ALJ considered the entire medical record, as well as the limitations caused by Plaintiff's physical and mental impairments, in assessing the RFC. Indeed, the record confirms the ALJ's findings that Plaintiff has received only conservative treatment with medication at the VA and Altapointe for his mental health issues, with some additional counseling for opioid and cannabis dependency, which has improved; that Plaintiff's complaints have centered mainly on problems with sleeping; that Plaintiff's treatment records at the VA and Altapointe regularly reflect normal mental health examination findings, including intact or good memory, normal concentration, good or fair judgment and insight, logical thought processes, normal mood and affect, intact speech, alert, oriented, and cooperative, with some noted agitation, anxiousness, and worry.[10] (Doc. 7-12 at 200-08; Doc.

_____

[10] With respect to the limitations caused by Plaintiff's mental impairments, the ALJ specifically noted: "[t]he claimant does have persistent evidence of anxiousness and continued changes to his medication regime; however, the persistent symptoms would be addressed by the limitations of the residual functional capacity. His limitation to only simple routine tasks of unskilled work that require simple work decisions and ordinarily have few changes that are gradually introduced would address

7-15 at 2, 6, 24, 38, 41, 46, 55, 61, 79, 118-19, 158-59, 186; Doc. 7-16 at 29, 34-41, 61). Moreover, as the ALJ found, the record contains no indication that Plaintiff's symptoms were not capable of management with medication and counseling for drug dependency. (Id.).

With respect to Plaintiff's left knee impairment, the ALJ noted that an x-ray and an MRI taken in July and October 2015, respectively, indicated that Plaintiff had only "minimal" degenerative changes, with a minimal, "small" tear in the meniscus edge, a "tiny" suprapatellar effusion, and "tiny" chondromalacia. (Doc. 7-15 at 145; Doc. 7-16 at 10-11). Also, Plaintiff's physical examination findings related to his left knee generally reflect normal range of motion, normal gait, no need for assistive device, normal muscle strength and tone, and treatment recommendations that he take over-the-counter anti-inflammatory medication and use Icy Hot. (Doc. 7-15 at 6, 55, 145, 151-52; Doc. 7-16 at 11, 35-36). While Plaintiff's treatment records do contain intermittent reports of pain, they also contain multiple reports of no pain. (Doc. 7-12 at 19, 24; Doc. 7-15 at 72, 178; Doc. 7-16 at 18, 27, 60, 64, 66).

both symptoms of his impairments, including the complaints regarding the daytime effects on his concentration from the insomnia, as well as even medication side effects given that his medications continue to be adjusted. Furthermore, the limitations regarding interaction would more directly address his complaints of anxiousness/anxiety." (Doc. 7-2 at 27-28).

Notably, there is no indication from any of Plaintiff's treatment providers that his left knee impairment has caused limitations in excess of the RFC.

The record also confirms the ALJ's finding that Plaintiff engages in a wide range of activities of daily living, including living alone, taking care of his own personal needs, jogging and exercising regularly, walking to Starbucks frequently to use the internet, doing his own household chores, including laundry, yard work, including mowing, driving, shopping, handling his own finances, and attending church from time to time. (Doc. 7-2 at 46-47, 52-56; Doc. 7-6 at 33-37).

In addition, State Agency non-examining psychologist, Dr. Joanna Koulianos, Ph.D., opined on July 9, 2015, that Plaintiff is moderately limited in his ability to understand, remember, and carry out *detailed* instructions, as well as in his ability to respond to changes in the work setting and his ability to interact with the general public, but that he is not significantly limited in his ability to understand, remember, and carry out *simple* instructions and to make *simple* work-related decisions or in his ability to get along with co-workers. (Doc. 7-3 at 10-12). As noted, the ALJ expressly included accommodations for these limitations in the RFC. (Doc. 7-2 at 25).

Having reviewed the ALJ's decision and the record in this

case, the Court is satisfied that the ALJ considered all of the relevant evidence related to Plaintiff's physical and mental impairments in arriving at the RFC and that the substantial evidence supports that assessment. [11]  (Doc. 7-2 at 25). Therefore, Plaintiff's claim that the ALJ was required to undertake a separate function-by-function analysis is without merit. See Poe v. Colvin, 2016 U.S. Dist. LEXIS 20254, *8, 2016 WL 688041, *3 (N.D. Ala. Feb. 19, 2016) (Because the ALJ properly assessed all of Plaintiff's impairments when formulating Plaintiff's RFC, and considered Plaintiff's medical records as a whole, Plaintiff's argument that the ALJ had to include a function-by-function analysis pursuant to SSR 96-8p is without merit); accord Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007); Aldao, 2016 U.S. Dist. LEXIS 42507 at *11,

---

[11] Although Plaintiff has cited evidence in the record related to his diagnoses and treatment for insomnia and substance abuse and his GAF scores of 50 (Doc. 8 at 7, 10) to support his argument that he is completely disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) (finding no error in ALJ's conclusion that Plaintiff's medical condition did not preclude her ability to perform a range of light work, despite Plaintiff's evidence of a diagnosis of fibromyalgia and documentation of symptoms of fibromyalgia, where substantial evidence, such as normal examination findings and Plaintiff's daily and social activities, supported the ALJ's conclusion that Plaintiff could perform a range of light work).

2016 WL 1236899 at *4.

> **B. Substantial evidence supports the ALJ's assignment of little weight to the opinions of Plaintiff's treating nurse practitioner, Dolores Bray, CRNP, as well as the assignment of great weight to the opinions of non-examining State Agency psychologist Joanna Koulianos, Ph.D.**

Next, Plaintiff argues that the ALJ erred in assigning little weight to the opinions of his treating nurse practitioner, Delores Bray, CRNP, that he has marked limitations in multiple functional areas (Doc. 7-15 at 203), while assigning great weight to the opinions of non-examining State Agency psychologist Joanna Koulianos, Ph.D., that he can perform simple work. (Doc. 8 at 8). Plaintiff maintains that while Ms. Bray is not technically an acceptable medical source, SSR 06-03p allows the Commissioner to use evidence from "other sources," such as nurse practitioners, to show the severity of a claimant's impairments and how they affect the claimant's ability to function. (Id.). Plaintiff also argues that the ALJ erred in assigning great weight to the opinions of State Agency psychologist Dr. Joanna Koulianos, Ph.D., because Dr. Koulianos did not examine Plaintiff, nor did she have the benefit of all of Plaintiff's medical records. (Id. at 12). Defendant counters that substantial evidence supports the ALJ's assignment of weight to the opinion evidence in this case. The Court agrees that Plaintiff's claims are without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). However, the opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'"

Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

First, with respect to nurse practitioner, Ms. Bray, the regulations are clear that a nurse practitioner is not an "acceptable medical source" for purposes of establishing an impairment. See Coralic v. Commissioner of Soc. Sec., 2014 U.S.

Dist. LEXIS 159272, *23 (M.D. Fla. October 28, 2014) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a), *adopted by,* 2014 U.S. Dist. LEXIS 159141, 2014 WL 6065757, *9-10 (M.D. Fla. Nov. 12, 2014). "However, a nurse practitioner is an 'other' medical source used 'to show the severity of impairments and how the impairments affect ability to work.'" Id. (quoting 20 C.F.R. § 404.1513(d)(1)). "Opinions from nurse practitioners are 'important and should be evaluated on key issues such as impairment severity and functional effects.'" Id. (citing SSR 06-03p, 2006 WL 2329939). However, "[o]pinions from 'other sources' are not entitled to any particular deference." Braun v. Berryhill, 2017 U.S. Dist. LEXIS 152885, *17, 2017 WL 4161668, *6 (M.D. Fla. Sept. 20, 2017) (quoting Adams ex rel. A.M.P. v. Astrue, 2012 WL 2923918, *5 (N.D. Ala. July 16, 2012). Nevertheless, "[a]n ALJ should generally explain the weight given to opinions from 'other sources,' or 'otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.'" Id. (quoting SSR 06-03p, 2006 WL 2329939, at *6).

In this case, the record shows that the ALJ evaluated Ms. Bray's opinions set forth in a Mental RFC Questionnaire dated January 8, 2016, that Plaintiff has "marked" limitations in

virtually every functional category, including activities of daily living, social functioning, and performing simple tasks. (Doc. 7-15 at 203-04). Ms. Bray noted on the questionnaire that she had seen Plaintiff on one other occasion, December 7, 2015, at which time his examination findings were largely normal, including normal rate of speech, logical thought processes, no delusions, no violent thoughts, good insight and judgment, alert, oriented, cooperative, intact memory, with agitation and decreased attention and concentration. (Doc. 7-15 at 203; Doc. 7-16 at 36). As the ALJ found, Ms. Bray's opinions were inconsistent with her examination findings on December 7, 2015, as well as with Plaintiff's admitted levels of activity. (Doc. 7-2 at 28). Given that substantial evidence supports the ALJ's decision to accord them little weight, Plaintiff's claim regarding Ms. Bray's opinions is without merit.

With respect to the opinions of State Agency non-examining psychologist, Dr. Koulianos, as previously discussed, the record shows that on July 9, 2015, Dr. Koulianos completed a mental RFC assessment and opined that Plaintiff is moderately limited in his ability to understand, remember, and carry out *detailed* instructions, to respond to changes in the work setting, and to interact with the general public, but that he is not significantly limited in his ability to understand, remember, and carry out *simple* instructions and make *simple* work-related

decisions or in his ability to get along with co-workers. (Doc. 7-3 at 10-12). The ALJ accorded great weight to Dr. Koulianos' assessment, finding that she provided a narrative explanation for her opinion that was well supported by its consistency with Plaintiff's treatment notes, as well as with Plaintiff's testimony related to his activities of daily living, and the record as a whole.[12] (Doc. 7-2 at 28-29).

Based on the evidence detailed above, the Court agrees. Because Dr. Koulianos' opinions are consistent with the substantial medical evidence in this case and do not conflict with the credible opinions of any examining sources, the ALJ properly accorded them great weight. See Harris v. Colvin, 2014 U.S. Dist. LEXIS 159749, *25, 2014 WL 5844240, *8 (S.D. Ala. Nov. 12, 2014). Therefore, Plaintiff's claim is without merit.

### C. Whether the ALJ erred by failing to properly consider the VA's 70% disability rating for PTSD?

Last, Plaintiff argues that the ALJ erred in failing to properly consider the VA's 70% disability rating for PTSD. (Doc. 8 at 6). The Commissioner counters that the ALJ fully considered the rating and found it to be inconsistent with a

_____

[12] Plaintiff argues that Dr. Koulianos did not have the benefit of all of Plaintiff's medical records at the time that she conducted her review. However, even if that were true, the ALJ did have the benefit of all of Plaintiff's medical records, and Dr. Koulianos' opinions are consistent with the record as a whole.

finding of disability. (Doc. 9 at 9). Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

"A VA rating, while not binding on the SSA, 'is evidence that should be considered and is entitled to great weight.'" Ostborg v. Commissioner of Soc. Sec., 610 Fed. Appx. 907, 914 (11th Cir. 2015) (quoting Brady v. Heckler, 724 F.2d 914, 921 (11th Cir. 1984) (internal quotation marks omitted)). In this case, the record reflects that the ALJ expressly considered the VA's 70% disability rating for PTSD and noted that, while it was not binding, it was being considered along with other evidence in the record. (Doc. 7-2 at 29). The ALJ pointed out that the 70% VA rating itself actually supported a finding that Plaintiff was not totally disabled and, in any event, the findings included in the VA documentation were inconsistent with the substantial medical evidence in the case. (Id.). The Court agrees.

A review of the March 23, 2015, VA disability rating documentation reveals that, in reaching its determination, the VA referenced Plaintiff's "near continuous" depression and panic attacks affecting his ability to function and his difficulty in establishing and maintaining work and social relationships. (Doc. 7-6 at 3-4, 64-65). However, as the ALJ indicated, not only are these findings inconsistent with Plaintiff's VA

treatment records, detailed above, and his treatment records from Altapointe, they are inconsistent with his testimony in his social security disability hearing conducted on February 7, 2016, that he has been looking for work at Winn-Dixie and Starbucks, that he jogs and exercises daily, that he goes to Starbucks daily for an hour or so to access the internet, and that he works well with a work crew that he helps assemble office furniture. (Doc. 7-2 at 47, 52-54, 56).

Because the ALJ considered the VA's 70% disability rating for PTSD and because that rating was inconsistent with the substantial medical evidence detailed in this case, including the VA's own treatment records showing largely normal mental examination findings, as detailed above, and Plaintiff's wide-ranging activities of daily living, the ALJ did not err in assigning it little weight. See Ostborg, 610 Fed. Appx. at 914 (finding no error in assignment of little weight to the VA's disability rating where "the ALJ closely scrutinized the VA's disability decision and gave specific reasons for determining the VA's determination had little bearing on [plaintiff's] case... [and] [s]ubstantial evidence support[ed] the ALJ's reasons for discounting the VA's determination...."). Because the ALJ "seriously considered [the VA's disability rating] in making his own determination that [plaintiff] was not disabled," he "did not err by failing to give the VA disability

23

determination 'great weight.'"   See Adams v. Commissioner of Soc. Sec., 542 Fed. Appx. 854, 857 (11th Cir. 2013).

In sum, the ALJ in this case determined that the substantial medical evidence, as well as Plaintiff's admitted activities of daily living, supported a finding that Plaintiff's limitations did not disable him from participating in substantial gainful activity, particularly given the non-exertional limitations contained in the RFC.  The record bears out these findings and supports the ALJ's conclusion that Plaintiff's activities and treatment records are not consistent with a finding of total disability.  Indeed, Plaintiff has failed to show that any limitations caused by his mental or physical impairments exceed the RFC and are not accommodated by the RFC's additional restrictions that he only occasionally climb ladders, ropes, or scaffolds, that he perform only simple routine tasks of unskilled work that require simple work decisions, that he have few changes that are gradually introduced, and that he interact with coworkers on a basic level, but only occasionally have contact with the public. (Doc. 7-2 at 25).

Based on the foregoing, the Court finds that Plaintiff's claim is without merit.

**V.   Conclusion**

For the reasons set forth herein, and upon careful

consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED.**

**DONE** this **7th** day of **March, 2018.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**